Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| CHRISTIAN J. RIVERA MALDONADO<br><br>Recurrente<br><br>Vs.<br><br>JUNTA DE LIBERTAD BAJO PALABRA<br><br>Recurrido | KLRA202500175 | *Revisión Administrativa* procedente de la Junta de Libertad Bajo Palabra<br><br>Sobre: Concesión de Libertad Bajo Palabra<br><br>Caso núm.:148974 |
| --- | --- | --- |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Campos Pérez y el Juez Sánchez Báez.[1]

Rodríguez Casillas, juez ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 29 de mayo de 2025.

Comparece ante nos el Sr. Christian Rivera Maldonado ("Rivera Maldonado o recurrente") para que revisemos la *Resolución* emitida el 23 de diciembre de 2024,[2] por la Junta de Libertad Bajo Palabra ("JLBP"). La JLBP no le concedió el privilegio de libertad bajo palabra por: (1) la cercanía del hogar propuesto con los hogares de las partes perjudicada; y, (2) los delitos por los cuales extingue la sentencia denotan grave menosprecio por la vida humana.

Inconforme, el señor Rivera Maldonado solicitó la reconsideración de la determinación, no obstante, la JLBP no se expresó en el término correspondiente.

Por los fundamentos que expondremos, **confirmamos** la Resolución recurrida.

---

[1] Se modifica la composición del Panel IX conforme a la OATA-2025-062 emitida el 5 de mayo de 2025, debido a la inhibición del Juez Marrero Guerrero.
[2] Notificada por correo electrónico el 21 de enero de 2025.

Número Identificador
SEN2025_____

**-I-**

Surge del expediente que el **15 de diciembre de 2015** el señor Rivera Maldonado fue sentenciado a una pena de veinticinco (25) años de cárcel por los delitos de: Homicidio; Tentativa de Asesinato Atenuado; y dos (2) cargos de Asesinato Atenuado; dos (2) cargos de violación al Artículo 5.04 de la Ley de Armas; y un cargo de violación al Artículo 5.15 de la Ley de Armas.[3]

**Ponchado el 24 de abril de 2024**, el Departamento de Corrección y Rehabilitación de Puerto Rico, a través de la Sra. Alexandra I. Rodríguez Rodríguez, (Técnico Sociopenal), preparó el *INFORME BREVE PARA REFERIR CASOS DE SENTENCIA POR DELITO GRAVE Y MENOS GRAVE ANTE LA JUNTA DE LIBERTAD BAJO PALABRA*.[4] Allí, identificó que el recurrente era elegible para la JLBP desde el 9 de noviembre de 2023 y cumpliría la totalidad de su sentencia el 25 de agosto de 2035.[5] En cuanto a los ajustes institucionales, indicó lo siguiente:

> *[C]ONFINADO CUMPLE CON SU PLAN INSTITUCIONAL. OSTENTA CUSTODIA MÍNIMA DESDE EL 29 DE ABRIL DE 2021. SE ENCUENTRA ASIGNADO A RENDIR LABORES DE MANTENIMIENTO Y MEJORAS PERMANENTES CON EVALUACIONES EXCELENTES. FINALIZÓ TERAPIAS CONTROL DE IMPULSOS EL 14 DE DICIEMBRE DE 2016. COMPLETÓ TERAPIAS TRANSFORMACIÓN DE PATRONES ADICTIVOS EL L4 DE DICIEMBRE DE 2016. FINALIZÓ EL CURSO DESARROLLO PERSONAL EL 5 DE DICIIMBRE DE 2016. FINALIZÓ PROGRAMA DE TRATAMIENTO PSICO-EDUCATIVO "APRENDIENDO A VIVIR SIN VIOLENCIA" EL 30 DE MAYO DE 2017, COMPLETÓ TALLER REAFIRMANDO MIS VALORES EL 28 DE ENERO DE 2020. COMPLETÓ PROYECTO ADIESTRAMIENTO, ALINEAMIENTO E INSERCIÓN LABORAL CAPACITACIÓN BÁSICA EN ENERGÍA RENOVABLE: SISTEMAS FOTOVOLTAICOS EL 30 DE BARIL DE 2021. COMPLETÓ CURSO DE JARDINERÍA COMERCIAL Y RESIDENCIAL EL 8 DE DICIEMBRE DE 2023. El 1 DE FEBRERO DE 2024 OBTUVO LICENCIA DE ARTESANO BONAFIDE EXPEDIDA POR LA COMPAÑÍA DE FOMENTO INDUSTRIAL. AL PRESENTE NO HA INCURRIDO EN QUERELLAS NI INFORMES NEGATIVOS. HA EXPRESADO QUERER REHACER SU VIDA, ESTABLECERSE ECONÓMICAMENTE, OBTENER UN EMPLEO ESTABLE Y FORMAR UNA FAMILIA.[6]*

---

[3] Véase; Anejo IV del Recurrente, pág. 14.
[4] Véase; Anejo IV del Recurrente, págs. 14 – 17.
[5] *Íd.*, a la pág. 14.
[6] *Íd.*, a las págs. 16 – 17.

Referente al *Plan de Salida*, en lo pertinente, expresó:

*1. NOMBRE NANETSHKA RIVERA OCASIO/ SR. ERIC I. LÓPEZ
ROSADO/ SRA. DIANA OCASIO ROSADO
Parentesco ESPOSA Y SUEGROS
Dirección física completa de la persona con quién residirá
(incluir puntos de referencia)
URB. LAS COLINAS # 20, CALLE 1, VEGA ALTA*
                                    *[...]*
*2. Amigo y Consejero: (incluya documento debidamente
cumplimentado en original y dos copias)
Nombre completo: SR. JOSÉ ANÍBAL SERRANO GARCÍA
Dirección: BARRIO QUEBRADA CRUZ, SECTOR PUNTA
BRAVA CARR. 165, KM 4.5 INT. TOA ALTA, P.R. 00953*
                                    *[...]*
*3. Empleo, Estudios o Tratamiento -Nombre de la Empresa y
del Patrono, dirección física, dirección postal y correo
electrónico, teléfono, Naturaleza del Negocio, funciones que
ejercerá, horario del trabajo. El plan de estudio se presentará
la carta de aceptación de la institución, educativa, con
expresión del programa o facultad al cual ingresará.
IAN TRANSPORT LLC
BARRIO QUEBRADA CRUZ, SECTOR PUNTA BRAVA, CARR.
165 KM 4.5 INT. TOA ALTA*
*[...].*[7]

El **12 de julio de 2024**, la Sra. Melecknise Román Homs (Técnico Sociopenal de la JLBP), emitió el *Informe de la Libertad Bajo Palabra.*[8] En lo referente al plan de vida propuesto, el amigo consejero y la oferta de empleo, indicó lo siguiente:

***V. PLAN DE VIDA PROPUESTO***
***A. Residencia y Hogar Propuesto:***
*El hogar propuesto está ubicado en la Urb. Las Colinas, calle
1 #20, Vega Alta, P.R.*
***Residen en el hogar:***
- *Sra. Nanetshka Rivera Ocasio de 30 años de edad,
  esposa, es empleada en la Panadería Palmarejo Bakery
  en Corozal, P.R.*
- *Sra. Diana Ocasio Rosado de 53 años de edad, suegra,
  labora cuidando envejecientes.*
- *Sr. Eric I. López Rosado de 66 años de edad, suegro y
  padrastro de la esposa del investigado, es veterano.*

*El hogar posee las facilidades físicas de 3 cuartos dormitorios,
un baño, sala, cocina, comedor, balcón, familia, laundry y
patio.*
*La casa es propiedad de los padres de la señora Rivera.
Pagan entre agua y luz de alrededor de $550.00 mensual. El
ingreso del hogar es $1,200.00 mensual sueldo de la señora
Rivera, $1,140.00 sueldo de la suegra y $6,000.00 mensual
sueldo del suegro entre los cheques de veterano y seguro
social.*
*Entrevistamos al Sra. Rivera, esposa expresó que visitó al
confinado el domingo 7 de julio de 2024. Lo observó tranquilo
y bien. No le mencionó que haya confrontado alguna situación
en la institución.*
*Entrevistamos al señor López y a la señora Ocasio, suegros
quienes aceptan al confinado en el hogar. La señora Ocasio,
expresó que conoce al confinado y a su familia desde hace*

---

[7] *Íd.*, a la pág. 17.
[8] Véase; Anejo V del Recurrente, págs. 18 – 20.

*años y son buenas personas. El señor López, no lo conocía, pero lo ha visitado a actividades en la institución alrededor de tres veces. Explicó que este hace artesanías en maderas muy bonitas. También lo vio participar en el teatro.*

*Al momento de nuestra visita los vecinos disponibles expresaron no conocer al confinado, sí a su familia quienes gozan de buena reputación. En relación al beneficio solicitado no opinaron por no conocer al confinado.*

[....]

**VII. _OFERTA DE EMPLEO_**

*La oferta de empleo es en IAN TRANSPORT LLC, ubicado en Bo. Quebrada, Cruz Sector Punta Brava, carr.165 Km. 4.5 int; Vega Alta, P.R. Teléfono 787-607-9474 del Sr. José Aníbal Serrano García.*

*Dialogamos con el señor Serrano, quien está dispuesto a ofrecerle empleo. Trabajaría de lunes a viernes. Consta en el expediente evidencia de carta de empleo.*

*En la visita a la residencia del Sr. Serrano, pudimos observar el área donde se guardan los camiones.*

**VIII. _AMIGO CONSEJERO_**

*El candidato para el rol de Amigo y Consejero, es el Sr. José Aníbal Serrano García, dueño de la compañía IAN TRANSPORT LLC. Informó que conoce al confinado desde la escuela. Indicó que desea ayudarlo en su proceso de rehabilitación. Conoce su situación legal, pero no le ha visitado en la cárcel.*

*Investigamos la reputación del señor Serrano en comunidad, este goza de buena reputación. No fue relacionado al uso de licor ni drogas. Lo describieron como muy trabajador y cooperador con sus vecinos. Lo recomendaron para ejercer el rol de Amigo y Consejero.*[9]

Tras la celebración de la vista ante un Oficial Examinador y la adjudicación correspondiente,[10] la JLBP emitió la *Resolución* recurrida el **23 de diciembre de 2024**,[11] denegando el privilegio de libertad bajo palabra.[12] La JLBP realizó las siguientes determinaciones de hechos:

*1. El peticionario fue reclasificado en custodia mínima desde el 29 de abril de 2020, conforme se desprende de su expediente.*

*2. Se benefició de tratamiento de Patrones Adictivos el 14 de diciembre de 2016.*

*3. Se benefició de Control de Impulsos el 14 de diciembre de 2016.*

*4. El peticionario finalizó los siguientes programas: Curso de Desarrollo Personal el 5 de diciembre de 2016, Taller reafirmando mis valores el 28 de enero de 2020, Proyecto de adiestramiento, alineamiento e inserción laboral, Capacitación básica en energía renovable: sistema fotovoltaicos el 30 de abril de 2021, Jardinería comercial y residencial el 8 de diciembre de 2023 y el 1 de febrero de 2024 obtuvo licencia*

---

[9] *Íd.*, a las págs. 19 – 20.

[10] La Oficial Examinadora de JLBP, la Sra. Nitza I. Rivera Trinidad, realizó el *"Informe Oficial de la Examinadora"*, sin embargo, en el documento sometido no surge la fecha del mismo. Véase; Anejo VI del Recurrente, págs. 21 – 24.

[11] Archivada en autos el 15 de enero de 2025 y notificada por correo electrónico el 21 de enero de 2025.

[12] Véase; Anejo I del Recurrente, págs. 1 – 5.

*de artesano bonafide expedida por la Compañía de Fomento Industrial.*

*5. Al peticionario le fue realizada evaluación psicológica por el SPEA el 12 de junio de 2024.*

*6. Cuenta con la muestra de ADN cumpliendo con la Ley 175 del 24 de julio de 1998 y la fecha de la muestra tomada fue el 21 de marzo de 2018 de diciembre de 2019.*

*7. Realizó los pagos de pena especial impuesta por el Tribunal de Primera Instancia, Sala Superior de Bayamón, por la cantidad de $600.00 dólares y la fecha de pago fue el 10 de ju1io de 2013.*

***8. El peticionario propuso residir con su esposa, Nanetshka Rivera Ocasio en la Urbanización Las Colinas, Calle 1 #20 en Vega Alta, Puerto Rico. La oferta de empleo y amigo consejero son del municipio de Vega Alta. <u>Dicho plan de salida no resultó viable debido a la poca distancia con las viviendas de las partes perjudicadas. La distancia es de aproximadamente 9 millas</u>.***

*9. Certificado Programa de Tratamiento Psico-educativo Aprendiendo a Vivir Sin Violencia el 30 de mayo de 2017.*[13]

Basado en lo antes expuesto y en el derecho aplicable, mencionaron los factores que le favorecieron y los que no le favorecieron al recurrente para la concesión del privilegio.

***[A]l peticionario le favorecieron los siguientes criterios:*** *cuenta con custodia mínima, cuenta con ADN, se benefició de una serie de programas y tratamiento incluyendo Control de Impulsos y SPEA, es primer ofensor, no tiene querellas ni casos pendientes en los tribunales.*

***Sin embargo**, el peticionario extingue sentencia por delitos que denotan **grave menosprecio por la vida humana: Asesinato atenuado (2 casos), Homicidio (un caso) y Tentativa de asesinato atenuado (un caso) además de infracciones a la Ley de Armas.** A esto tenemos que añadir que **la distancia entre los hogares de perjudicados y el hogar propuesto es muy cercana. <u>Por lo que concluimos que tomando en consideración todos los factores del presente caso, nos inclinamos hacia la protección de la comunidad por lo que consideramos que el peticionario no cualifica para beneficiarse del privilegio de libertad bajo palabra actualmente</u>.***[14]

La JLBP determinó no conceder el privilegio de libertad bajo palabra al recurrente y expresó que el caso volverá a ser considerado en Diciembre de 2025.

No conforme, el **7 de febrero de 2025** el recurrente sometió una *Moción de Reconsideración.*[15] En síntesis, alegó que la determinación de la JLBP era arbitraria, irrazonable y no se fundamentó en el expediente. Añadió que utilizar la distancia y la

---

[13] *Íd.*, a la pág. 1. *Énfasis nuestro.*
[14] *Íd.*, a la pág. 3. *Énfasis nuestro.*
[15] Véase; Anejo I del Recurrente, págs. 6 – 12.

naturaleza de los delitos para denegarle el privilegio fue irrazonable y no se sustenta con el expediente del caso. Por lo que solicitó la reconsideración de la no concesión del privilegio.

La JLBP no se expresó en cuanto a la solicitud de reconsideración, por lo cual, el **24 de marzo de 2025** el señor Rivera Maldonado acudió ante este Foro intermedio en una *Petición de Revisión Administrativa*, señalando el siguiente error:

> *Incurrió la Junta de Libertad bajo Palabra en un patente abuso de discreción al denegar la concesión de libertad bajo palabra al aquí recurrente cuando dicha decisión no está basada en forma alguna en evidencia encontrada en el expediente del caso, constituyendo a su vez una abierta violación al debido proceso de ley.*

El **28 de abril de 2025** compareció la JLBP representada por la Oficina del Procurador General de Puerto Rico, en el *"Escrito en Cumplimiento de Resolución"*.

Así, con el beneficio de ambas partes, procedemos a resolver.

**-II-**

**-A-**

La libertad bajo palabra es una medida correccional de génesis legislativo, dirigido a fomentar la disciplina carcelaria y la rehabilitación del convicto. En Puerto Rico, el sistema de libertad bajo palabra está reglamentado por la Ley Núm. 118 de 22 de julio de 1974, según enmendada.[16]

Esta pieza legislativa creó la *Junta de Libertad Bajo Palabra* confiriéndole autoridad para decretar la libertad bajo palabra de cualquier persona recluida en una de las instituciones penales de Puerto Rico siempre que cumpla con los requisitos que dicho estatuto imponga.[17] La JLBP tiene como objetivo principal la rehabilitación del delincuente y la protección de los mejores intereses de la sociedad.[18]

---

[16] Ley Núm. 118 de 22 de julio de 1974, según enmendada, conocida como *Ley de la Libertad Bajo Palabra*, 4 LPRA sec. 1501 *et seq.*
[17] Art. 3 de la Ley Núm. 118 de 22 de julio de 1974, 4 LPRA sec. 1503.
[18] *Íd.*

> *[P]ara determinar si concede o no la libertad bajo palabra, la Junta tendrá ante sí toda la información posible sobre el historial social, médico, ocupacional y delictivo de cada confinado, incluyendo la actitud de la comunidad respecto a la liberación condicional del sujeto, y una evaluación que deberá someter la Administración de Corrección.[19]*

Ante el cumplimiento con los requisitos establecidos por la JLBP, una persona recluida en una institución carcelaria en Puerto Rico podrá solicitar formalmente el privilegio de libertad bajo palabra, siempre y cuando demuestre un alto grado de rehabilitación y que no represente un riesgo a la sociedad.[20]

> *[L]a solicitud por parte de la persona recluida conllevará el consentimiento de ésta para que la Junta pueda revisar y obtener copia de todos los expedientes sobre dicha persona en poder de la Administración de Corrección, a fin de que pueda ser considerada para la concesión de los privilegios contemplados en esta Ley. Recibida la solicitud, la Junta referirá la evaluación de la misma a uno de los paneles para el trámite y la adjudicación correspondiente.[21]*

Como corolario de lo anterior, el Artículo 3-D del estatuto establece los criterios que la JLBP deberá tomar en consideración para determinar si concede o no el privilegio al solicitante;[22] en específico, son los siguientes:

> *(1) La naturaleza y circunstancias del delito por el cual cumple sentencia el solicitante.*
> *(2) Las veces que el solicitante ha sido convicto y sentenciado.*
> *(3) Una relación de liquidación de la(s) sentencia(s) que cumple el solicitante.*
> *(4) La totalidad del expediente penal y social del solicitante, así como otros informes médicos o de cualquier otro profesional de la salud mental.*
> *(5) Su historial de ajuste institucional y del historial social y psicológico del confinado, preparado por la Administración de Corrección y su historial médico y psiquiátrico preparados por Salud Correccional del Departamento de Salud.*
> *(6) Su edad.*
> *(7) Sus tratamientos para condiciones de salud.*
> *(8) Opinión de la víctima.*
> *(9) Planes de estudios, adiestramiento vocacional o estudio y trabajo.*
> *(10) Lugar en el que piensa residir el confinado y la actitud de dicha comunidad, de serle concedida la libertad bajo palabra.*
> *(11) Cualquier otra consideración meritoria que la Junta haya dispuesto mediante reglamento. La Junta tendrá la discreción para considerar los mencionados criterios según estime*

---

[19] *Íd.*
[20] Art. 3-C de la Ley Núm. 118 de 22 de julio de 1974, 4 LPRA sec. 1503c.
[21] *Íd.*
[22] Art. 3-D de la Ley Núm. 118 de 22 de julio de 1974, 4 LPRA sec. 1503d.

*conveniente y emitirá resolución escrita con determinaciones de hechos y conclusiones de derecho.*[23]

**-B-**

Por su parte, el *Reglamento de la Junta de Libertad Bajo Palabra*, Reglamento Núm. 9232, aprobado el 18 de noviembre de 2020 ("Reglamento Núm. 9232 de la JLBP"), fue creado para establecer las normas procesales que regirán la función adjudicativa de la Junta.[24]

El Reglamento Núm. 9232 de la JLBP establece el proceso y las reglas aplicables para solicitar del privilegio de libertad bajo palabra.[25] Dicho reglamento incorpora mecanismos que permiten realizar los procesos dentro del término que se dispone mientras se salvaguarda el derecho al debido proceso de ley de los peticionarios. También, establece los derechos concedidos a las víctimas de delito mediante la instauración de normas que le permiten la participación en los procedimientos ante la JLBP. Sus disposiciones se deben de interpretar de forma tal que *"[s]e garantice un trato equitativo y deferente a los miembros de la población correccional, peticionarios y liberados de conformidad con la política pública de rehabilitación, según establecida en el Artículo VI, Sección 19 de la Constitución del Estado Libre Asociado de Puerto Rico",* y propiciar el tratamiento adecuado que permita la rehabilitación moral y social de estos.[26]

La JLBP deberá evaluar las solicitudes caso a caso y conforme al grado de rehabilitación y ajuste que presente el solicitante durante el término que ha estado recluido.[27] Referente a los criterios que deben ser considerados por la JLBP, la Sección 10.1 del Artículo X del Reglamento Núm. 9232, establece en los siguientes criterios:

---

[23] *Íd.*

[24] El Reglamento Núm. 9232, *supra* fue enmendado por el Reglamento Núm. 9603 del 25 de septiembre de 2024. Sin embargo, al momento que la JLBP evaluó el presente caso estaba vigente el Reglamento Núm. 9232, *supra,* por ello, es el reglamento aplicable.

[25] Véase; Artículo IX del Reglamento Núm. 9232, *supra.*

[26] Véase; Artículo II del Reglamento Núm. 9232, *supra.*

[27] Véase; Artículo X del Reglamento Núm. 9232, *supra.*

1. ***Historial delictivo***
   a. *La totalidad del expediente penal.*
   b. *Los antecedentes penales. Se entenderá por antecedentes penales las veces que un peticionario haya sido convicto y sentenciado.*
   c. *No se tomarán en consideración aquellos delitos en los cuales hayan transcurrido tres (3) años desde que el peticionario cumplió la sentencia.*
   d. ***Naturaleza y circunstancias del delito, por el cual cumple sentencia, incluyendo el grado de fuerza o violencia utilizado en la comisión del delito.***
   e. *Si cumplió con el pago de la pena especial para el Fondo de Compensación y Servicios a las víctimas y Testigos de delito, dispuesta en el Artículo 48 (i) del Código Penal de 2012, en los casos que aplique.*
   f. *Si existe una orden de detención ("detainer") emitida por cualquier estado de los Estados Unidos, el tribunal federal, el gobierno federal y/o del Servicio de Inmigración y Naturalización.*
      i. *El sólo hecho de que exista una orden de detención ("detainer") contra un peticionario no será fundamento para denegar la libertad bajo palabra siempre y cuando el peticionario cumpla con todos los demás criterios.*
2. *Una relación de liquidación de la(s) sentencia(s) que cumple el peticionario.*
3. *La clasificación de custodia, el tiempo que lleva en dicha clasificación y si hubo cambio de clasificación y las razones para ello.*
   a. *La Junta no concederá libertad bajo palabra cuando el peticionario se encuentre en custodia máxima.*
4. *La edad del peticionario.*
5. *La opinión de la víctima.*
   a. *La opinión de la víctima constituye un factor a ser considerado por la Junta, pero la determinación sobre el grado de rehabilitación de un peticionario y si está capacitado para continuar cumpliendo su sentencia en la libre comunidad es prerrogativa de la Junta.*
6. *El historial social*
   a. *Se tomará en consideración la totalidad del expediente social.*
   b. *Si anteriormente ha estado en libertad bajo palabra, libertad a prueba o cualquier otro programa de desvío.*
      i. *Cumplimiento y ajustes institucionales*
      ii. *Sí se le revocó la libertad bajo palabra, libertad a prueba o cualquier otro programa de desvío.*
      iii. *No se tomará en consideración una revocación si han transcurrido tres (3) años desde la fecha en que se revocó la libertad bajo palabra, libertad a prueba o cualquier otro programa de desvío.*
   c. *El historial de ajuste institucional y el historial social preparado por el Departamento de Corrección y Rehabilitación.*
   d. *Si se le han impuesto medidas disciplinarias, disponiéndose que no se tornarán en consideración aquellas medidas disciplinarias en las cuales ha transcurrido un (1) año desde la fecha en que se impuso dicha medida disciplinaria.*

e. *El historial de trabajo y/o estudio realizado en la institución.*

f. *En los casos contemplados en el Artículo VII, Sección 7.4 de este Reglamento, el peticionario debe haber observado buena conducta en la institución por un lapso razonable de tiempo que no será menor de un (1) año natural, ininterrumpido, a la fecha de cumplir con las condiciones para el privilegio.*

7. *Si cuenta con un plan de salida estructurado y viable en las áreas de oferta de empleo y/o estudio, residencia y amigó consejero.*

a. *El plan de salida podrá ser en Puerto Rico, en cualquier estado de los Estados Unidos o en cualquier otro país que tenga un tratado de reciprocidad con Estados Unidos.*

b. *Cuando el plan de salida propuesto sea fuera de la jurisdicción del Gobierno de Puerto Rico:*

   i. *El peticionario proveerá la dirección física del lugar donde propone residir, de concederle la libertad bajo palabra, el nombre y número de teléfono, correo electrónico de la persona con la cual residirá y su relación con el peticionario.*

   ii. *La solicitud será tramitada por el Programa de Reciprocidad del Departamento de Corrección y Rehabilitación al Estado receptor para que éste proceda a investigar la información provista por el peticionario.*

   iii. *No se aceptará un plan de salida fuera de la jurisdicción de Puerto Rico, hasta tanto no se presente la carta de aceptación del Programa de Reciprocidad.*

c. *No se aceptará un plan. de salida en un país que no tenga un tratado de reciprocidad con los Estados Unidos para la transferencia de personas en libertad bajo palabra o libertad a prueba.*

d. *Oferta de empleo y/o estudio.*

   i. *Todo peticionario deberá proveer una oferta de empleo o, en la alternativa, un plan estudios adiestramiento vocacional o estudio y trabajo.*

   ii. *La oferta de empleo se presentará mediante carta suscrita por la persona que extiende la oferta de empleo al peticionario, incluyendo la siguiente información:*

      (a) *Nombre completo, dirección postal, física, electrónica y teléfono(s) de la persona que ofrece el empleo*

      (b) *Nombre, dirección postal, física, electrónica y teléfono(s) y naturaleza del negocio en el cual se ofrece el empleo.*

      (c) *Funciones que ejercerá el peticionario y el horario de trabajo.*

   iii. *Los planes de estudio, incluyendo el adiestramiento vocacional y/o el programa de estudio y trabajo, se presentarán sometiendo la carta de aceptación de la institución, educativa, con expresión del programa o facultad al cual ingresará.*

   iv. *La falta de oferta de empleo o estudio no será razón suficiente pata denegar el privilegio.*

   v. *Se exime de presentar una oferta de empleo o estudios en aquellos casos en que el peticionario padezca de alguna incapacidad física, mental o*

*emocional, debidamente diagnosticada y certificada por autoridad competente, o sea mayor de sesenta (60) años.*

**e. Residencia**

i. *Todo peticionario tiene que indicar el lugar en el cual piensa residir de serle concedida la libertad bajo palabra, bien sea en una residencia o un programa interno.*

ii. *De proponer una residencia, el peticionario proveerá el nombre completo, número de teléfono y correo electrónico de la persona con la cual residirá, o de algún familiar cercano, así como la dirección física de la residencia. En estos casos, se realizará una investigación sobre la actitud de la comunidad donde propone residir el peticionario, de serle concedida la libertad bajo palabra.*

iii. *De proponer una residencia propia y no contar con recurso familiar, deberá presentar como recurso y apoyo el amigo consejero o alguna persona que le pueda servir de apoyo aunque no resida con el peticionario. Deberá presentar el nombre completo de esa persona, número de teléfono y correo electrónico. En estos casos, se realizará una investigación sobre la actitud de la comunidad donde propone residir el peticionario, de serle concedida la libertad bajo palabra.*

iv. *Si el peticionario interesa ingresar a un programa interno, tendrá que presentar la carta de aceptación del programa, así como proponer una residencia alterna en la cual disfrutará de los pases, en los casos que aplique. Dicha residencia alterna será corroborada para determinar su viabilidad. Si la residencia alterna no resulta viable, el peticionario no podrá disfrutar de pases hasta tanto no provea una residencia alterna viable, y así lo autorice la Junta.*

v. **Para determinar si la vivienda propuesta es viable, la Junta considerará:**

(a) *Las características personales e historial delictivo de las personas con las cuales convivirá el peticionario en la vivienda, y como el peticionario se relaciona con estos.*

(b) *Opinión de la comunidad sobre la determinación de conceder el privilegio y las personas con las cuales convivirá el peticionario.*

(c) *Condición de la planta física de la residencia y cantidad de habitantes de la misma.*

(d) **Si la residencia propuesta está relativamente cercana a la residencia de la victima de delito**.

(e) *Si existe algún impedimento en ley para que el peticionario resida en la vivienda propuesta, excepto se encuentre incluido en el contrato de vivienda o certificación de la administración correspondiente.*

*(f) Cualquier otra consideración que la Junta estime pertinente dentro de los méritos del caso individual.*

f. *Amigo Consejero*
   i. *El amigo consejero tiene la función de cooperar con la Junta y el Programa de Comunidad del Departamento de Corrección y Rehabilitación, en la rehabilitación del peticionario.*
   ii. *Requisitos*
      (a) *No tener relación de afinidad hasta el segundo grado, o de consanguinidad con el peticionario. Esta prohibición no aplicará en aquellos casos que la Junta, en el ejercicio de su discreción, entienda meritorio a base de las circunstancias particulares del caso.*
      (b) *No ser o haber sido representante legal del peticionario en cualquier proceso judicial o administrativo.*
      (c) *Tener la mayoría de edad*
      (d) *Ser residente de Puerto Rico. Puede residir en el área limítrofe al Programa de Comunidad con competencia. Debe tener contacto frecuente con el peticionario.*
      (e) *Ser una persona de integridad moral.*
      (f) *No tener antecedentes penales.*
   iii. *Se realizará una investigación en la comunidad sobre la conducta e integridad moral de la persona propuesta para amigo consejero.*
   iv. *No se requerirá cumplir con el requisito de amigo consejero en aquellos casos en que el plan de salida propuesto consista únicamente en ser ingresado a un programa de tratamiento interno.*
   v. *La falta del amigo consejero no será razón suficiente para denegar el privilegio.*
   vi. *No será requerido el amigo consejero a peticionarios mayores de sesenta (60) años.*

8. *Historial de salud*
   a. *Se tomarán en consideración todos los informes emitidos por cualquier profesional de la salud mental, que formen parte del historial psicológico preparado por el Departamento de Corrección y Rehabilitación y/o el historial psiquiátrico preparado por Salud Correccional, según apliquen.*
   b. *Historial médico del peticionario.*
   c. *Tratamientos para condiciones de salud que. haya recibido o reciba el peticionario.*
      i. *Estos tratamientos incluyen los relacionados al control de adicción a sustancias controladas y/o alcohol, control de agresividad, y cualquier otro tratamiento trazado por el Departamento de Corrección y Rehabilitación.*
      ii. *También se tomará en consideración la necesidad de que el peticionario se beneficie de algún tratamiento, en los casos en que no haya recibido alguno.*
      iii. *Se requerirá haber tomado y culminado en la institución el Programa de Aprendiendo a Vivir sin Violencia a los peticionarios que cumplan pena de reclusión por los siguientes delitos*
         (a) *Asesinato.*

*(b) Delitos contra la indemnidad sexual (delitos de violencia sexual).*

*(c) Secuestro.*

*(d) Los delitos tipificados en la Ley de Prevención e Intervención con la Violencia Domestica, Ley Núm. 54 de 15 de agosto de 1989, según enmendada. Que impliquen grave daño corporal.*

*(e) Robo.*

*iv. No obstante, lo anterior, la Junta podía requerir que un peticionario se beneficie del Programa Aprendiendo a Vivir Sin Violencia cuando el caso presente circunstancias extraordinarias que lo ameriten, independientemente del delito por el cual cumple sentencia de reclusión.*

*v. Si el peticionario no cuenta con la evaluación inicial del Negociado de Rehabilitación y Tratamiento (NRT) o entidad análoga, se le podrá conceder el privilegio para que dicha evaluación pueda ser realizada en la libre comunidad. Esta situación se dará en casos excepcionales. Consideramos casos excepcionales los siguientes: personas de edad avanzada, personas con condiciones de salud o impedimentos a nivel institucional y personas con sentencias menores de treinta (30) años. Quedan excluidos los delitos mencionados en el artículo X, Sección 10.1 8 c. iii.*

*vi. Todo miembro de la población correccional o liberado podrá presentar certificado de tratamiento o evaluación psicológica o psiquiátrica privada a su propio costo a la Junta de Libertad Bajo Palabra para posible aprobación.*

*9. Si se registró en el Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores, en aquellos casos en que el peticionario cumpla sentencia por alguno de los delitos identificados en el Artículo 3 de la Ley Núm. 266 de 9 de septiembre de 2004, según enmendada.*

*10. Si se registró en el Registro de Personas Convictas por Delitos de Violencia Doméstica, en aquellos casos en que el peticionario cumpla sentencia por alguno de los delitos identificados en la Ley Núm. 59 de 1ro de agosto de 2017, según enmendada.*

*11. Cumplimiento con la toma de muestra de ADN, en aquellos casos en que el peticionario extingue sentencia por alguno de los delitos identificados en el Artículo 8 de la Ley Núm. 175 de 24 de julio de 1998, según enmendada.*

***12. La Junta tendrá discreción para considerar los mencionados criterios según considere conveniente y cualquier otro meritorio con relación a la rehabilitación del peticionario y al mejor interés de la sociedad.***[28]

En cuanto a las determinaciones de la JLBP, estas serán tomadas a base de la preponderancia de la prueba, a la luz de la

---

[28] Véase; Sección 10.1 inciso (B) del Artículo X del Reglamento Núm. 9232, *supra.*

prueba presentada en la vista y de la totalidad del expediente.[29] Una vez sea celebrada la vista, el Oficial Examinador que presidió la vista deberá preparar un informe que debe incluir: resumen de la evidencia recibida; de manera separada las determinaciones de hecho y las conclusiones de derecho; y los hechos de la ley que fundamentan su recomendación.[30] Luego, la JLBP evaluará dicha recomendación y emitirá su determinación por escrito a través de la correspondiente resolución.[31]

**-C-**

Sabido es que las actuaciones de las autoridades correccionales gozan de gran discreción y merecen la deferencia de los tribunales ante la revisión judicial. [32]

Esa deferencia se extiende a "la adopción y puesta en vigor de sus reglamentos, pues es la entidad con la encomienda de preservar el orden en las instituciones carcelarias".[33]

Por ello, nuestra la función revisora —con respecto a las determinaciones del DCR— como de cualquier otra agencia, es de carácter limitado.[34] Siendo así, la revisión de las decisiones finales de los organismos y agencias administrativas se tramitará de conformidad con las disposiciones de la Ley de Procedimiento Administrativo Uniforme.[35] En fin, nuestra función se circunscribe a considerar si la determinación de la agencia es razonable, ya que se persigue evitar que el tribunal revisor sustituya el criterio de la agencia por el suyo.[36]

---

[29] Sección 14.1 – *Disposiciones generales* del Artículo XIV del Reglamento Núm. 9232, *supra.*

[30] Sección 14.2 – *Informe de Oficial Examinador* del Artículo XIV del Reglamento Núm. 9232, *supra.*

[31] *Íd.*

[32] *Cruz Negrón v. Administración de Corrección*, 164 DPR 341 (2005) citado *Pérez López v. Depto. de Corrección,* 208 DPR 656, 674 (2022).

[33] *Álamo Romero v. Adm. de Corrección*, 175 DPR 314, 334 (2009) citado en *Pérez López v. Departamento de Corrección, supra*, en la pág. 687.

[34] *López Borges v. Adm. Corrección*, 185 DPR 603 (2012).

[35] Ley Núm. 38 de 30 de junio de 2017, según enmendada, mejor conocida como *"Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico"*, 3 LPRA sec. 9601, *et seq.*

[36] *Hernández Álvarez v. Centro Unido*, 168 DPR 592, 616 (2006); *Otero v. Toyota,*

**-III-**

En el presente recurso, el señor Rivera Maldonado señala que la JLBP abusó de su discreción al no concederle el privilegio de libertad bajo palabra. Arguye que dicha determinación no está basada en la evidencia del expediente del caso, por lo que ello constituye una violación al debido proceso de ley. No tiene razón.

Pese a que el recurrente plantea que presentó un plan de salida estructurado, completo y viable, la Resolución recurrida en su Determinación de Hecho Núm. 8 indica que *"[d]icho plan de salida no resultó viable debido a la poca distancia con las viviendas de las partes perjudicadas. La distancia es de aproximadamente 9 millas".*[37] Es decir, la determinación de la proximidad es un factor válido que la JLPB puede considerar y utilizarlo como fundamento para denegar el privilegio.

Tampoco la JLBP erró al determinar que los delitos por los que el recurrente extingue su sentencia denotan grave menosprecio por la vida humana. Nótese, que uno de los criterios a considerar, es *la naturaleza y circunstancias del delito por la cual cumple sentencia el solicitante.*

Así, la JLBP consideró todos los factores y se inclinó por denegar la solicitud del recurrente. Tal determinación no resulta irrazonable o arbitraria, pues surge del expediente la proximidad de la residencia propuesta con respecto a las víctimas y los delitos por los que cumple sentencia denotan grave menosprecio por la vida humana.

A tono con lo antes expresado, la determinación de la JLBP nos resulta razonable, por lo que no intervendremos con esta.

---

163 DPR 716, 728 (2005).
[37] Véase; Anejo I del Recurrente, pág. 1.

**-IV-**

Por los fundamentos antes expuestos, se confirma la Resolución recurrida.

Lo acordó el Tribunal y certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones